In re Robert O. MCCLUNG and Ramona McClung, Debtors.

State of Idaho, Department of Finance, Securities Bureau, Plaintiff,

v.

Robert O. McClung, Defendant.

Bankruptcy No. 03–40682.
Adversary No. 03–6337.

United States Bankruptcy Court,
D. Idaho.

Jan. 27, 2004.

Joseph B. Jones, Office of the Attorney General, Boise, ID, for Plaintiff.

Brent T. Robinson, Ling & Robinson, Rupert, ID, for Defendant.

## MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO DISMISS

JIM D. PAPPAS, Chief Judge.

### Background

Plaintiff, State of Idaho Department of Finance, alleges that Defendant Robert McClung, a Chapter 7 debtor, sold securities in violation of Idaho law and defrauded several individuals as part of an investment scheme. In its complaint, Plaintiff alleges that Defendant's obligations arising from this conduct should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(19). Compl., ¶¶ 16–24, Docket No. 1.

Defendant filed a motion to dismiss the adversary proceeding. Docket No. 3. Defendant contends that any debts arising from his actions are not owed to Plaintiff, but rather to the individual "investors" whom Defendant allegedly defrauded. Therefore, Defendant argues, Plaintiff is not a creditor in his bankruptcy case, and lacks standing to bring this action under § 523.

The Court conducted a hearing concerning Defendant's motion on December 17, 2003, at which the parties appeared and presented argument. In addition, both parties filed written briefs. Docket Nos. 4, 6 and 7. After due consideration of the record, the parties' submissions, and applicable law, this Memorandum constitutes the Court's disposition of the motion.[1]

---

1. On January 26, 2004, Plaintiff filed a supplemental brief. Docket No. 9. The parties at the hearing did not request additional time to submit briefs, and the Court deemed the mat-

## Facts

Prior to commencement of the bankruptcy case, Plaintiff sued Defendant in state court on behalf of unknown individuals who had allegedly been induced by Defendant to give him their money in return for his promise to invest it on their behalf. *State of Idaho, Department of Finance v. McClung*, Seventh District, Bonneville County Case No. CV–02–7169. While Defendant allegedly led these persons to believe that their investments had resulted in significant gains, Plaintiff alleged that Defendant had actually spent their money.

The parties eventually stipulated to entry of an amended default judgment in favor of Plaintiff and against Defendant, which the state court entered on March 25, 2003. Compl., Ex. C, Docket No. 1. This judgment determined that Defendant had violated the Idaho Securities Act, Idaho Code §§ 30–1401–1458, and defrauded those persons who had given Defendant money to invest on their behalf. Compl., Ex. C, Docket No. 1. The judgment imposed an injunction against Defendant restraining him from any further activities in violation of Idaho law, and required Defendant to pay restitution to each investor in an amount equal to any consideration that Defendant received in violation of the Act. The judgment contemplates that further hearings in state court would be necessary to determine the amount of restitution to be paid to each individual who was harmed. The state court also awarded Plaintiff a judgment against Defendant for $5,000 in attorney fees.

Shortly after entry of the amended default judgment, on April 15, 2003, Defendant filed for bankruptcy relief under Chapter 11; he converted his case to Chapter 7 on September 25, 2003. Docket Nos. 1, 38, Case No. 03–40682.[2] Plaintiff filed this adversary proceeding seeking a determination that the restitution award made in the state court judgment, together with the attorney fees Defendant owes Plaintiff under the judgment, are excepted from discharge under § 523(a)(2)(A), (a)(4), and (a)(19).

## Legal Standards

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); Fed. R. Bankr.P. 7012(b); *see also Miles v. Okun (In re Miles)*, 294 B.R. 756, 763 (9th Cir. BAP 2003). The allegations of material fact in the complaint must be assumed by the trial court to be true and construed in the light most favorable to the nonmoving party. *Hall v. Sunshine Mining Co. (In re Sunshine Precious Metals, Inc.)*, 157 B.R. 159, 160 (Bankr.D.Idaho 1993). A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934 (9th Cir.1993)).

## Disposition

**A. § 523(a)(2)(A) and § 523(a)(4).**

Only "the creditor to whom such debt is owed" may request a determination by the bankruptcy court concerning whether a debt allegedly resulting from the fraudulent act of the debtor should be excepted from discharge under either

ter under advisement at that time. The Court therefore did not consider Plaintiff's submission in deciding the issues.

2. The Court, under Fed.R.Evid. 201, takes judicial notice of its files in the underlying bankruptcy case.

§ 523(a)(2)(A) or (a)(4).[3] 11 U.S.C. § 523(c)(1); *cf. Fezler v. Davis (In re Davis)*, 194 F.3d 570, 574 (5th Cir.1999) (noting that, for standing purposes, § 523(c) requires an action under § 523(6) to be brought by a creditor). Such a request is made by commencement and prosecution of an adversary proceeding by the creditor against the debtor. Fed. R. Bankr.P. 7001(6). As used in the Bankruptcy Code ("Code"), the term "creditor" refers to an "entity that has a claim against the debtor that arose prior to the filing of the [bankruptcy petition] ...." 11 U.S.C. § 101(10). A creditor has a "claim" against the debtor if it has either a "right to payment" from the debtor, or a "right to an equitable remedy [as against the debtor] for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5).

Defendant argues that under this statutory scheme, Plaintiff lacks standing to pursue a § 523 action because any restitution he may be obligated to pay under the state court judgment is owed to third parties (*i.e.*, the "investors"), not to Plaintiff.[4] To support his argument, Defendant relies upon *State of Missouri v. Cannon (In re Cannon)*, 741 F.2d 1139 (8th Cir.1984). In that case, the court held that the state attorney general, who, before bankruptcy, had sued the debtor for violations of Missouri's Merchandising Practices Act and then sought to have the restitution debt declared nondischargeable under § 523(a)(2)(A), was not a creditor for purposes § 523(c). The court reasoned that,

under the facts, the state did not have a "right to payment" from the debtor as defined by the Code. *See also State of Oregon v. Lacy (In re Lacy)*, 74 B.R. 23 (Bankr.D.Or.1987) (following *Cannon*, and holding that the state was not a creditor of the debtor under Oregon's securities laws because under those laws the state could not enforce any right to payment).

Plaintiff insists that *Cannon* should not be considered persuasive here, directing the Court instead to *SEC v. Cross (In re Cross)*, 218 B.R. 76 (9th Cir. BAP 1998). In that case, the Panel held that the SEC was a creditor with standing to pursue an exception to discharge action under § 523(a)(2)(A) where the debtor had been previously ordered by a court to pay restitution to its investors for acts taken in violation of federal securities laws. The Panel concluded that the SEC was a creditor because it was the only entity clothed with statutory authority to enforce federal securities laws and to seek the appointment of a receiver and the disgorgement of funds obtained in violation of those laws. *Cross*, 218 B.R. at 78. The Panel reasoned that even though a receiver had been appointed to marshal the funds, and therefore the SEC was not to be a recipient of any of that money, the SEC was not divested of its creditor status because the designation of a receiver as a depository was merely a procedural step undertaken in that case for administrative convenience. *Id.* at 79.

---

3. Section 523(a)(2)(A) excepts from discharge any debt for "money, property, [or] services ... to the extent obtained, by ... false pretenses, a false representation, or actual fraud ...." Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ...." Plaintiff, as the party objecting to discharge, carries the burden of

proving the facts necessary to sustain an exception to discharge. *Wussler v. Silva (In re Silva)*, 00.2 I.B.C.R. 66, 69 (Bankr.D.Idaho 2000).

4. Defendant concedes that Plaintiff is a "creditor" with respect to its claim against him for the $5,000 in attorney fees awarded under the state court judgment.

The parties suggest there is a clear division of authority on the issue of whether Plaintiff has standing to prosecute a § 523(a) action in this case. The Court, on the other hand, concludes that *Cross* and *Cannon* are instead quite consistent in their reasoning. Both decisions require an examination of the specific provisions of the statutes the governmental entity seeks to enforce, and under which the debtor's monetary liability has been established, followed by a determination by the bankruptcy court whether those statutes grant the governmental entity the right to enforce any restitution that may be ordered. In *Cannon,* the statute relied upon by the state limited the government's options to seeking the imposition of an injunction. 741 F.2d at 1140. There, the state court independently ordered the payment of restitution by the debtor, invoking its contempt powers as the source of its authority.

In contrast, the Panel noted in *Cross* that the SEC had been granted express authority by Congress to not only enforce the securities laws, but also to seek disgorgement of funds obtained in violation of those laws. 218 B.R. at 78. As the only entity with power to enforce the remedy, the Panel concluded that the SEC had standing as a creditor in the bankruptcy case to request a dischargeability determination because that agency was the only entity that could enforce the right to payment. *Cross,* 218 B.R. at 79.

■ Based upon the Court's research, it seems fair to observe that "[m]ost courts that have addressed the issue ... [conclude] that any time a governmental entity has a right of action against a debtor, the governmental entity is a creditor as defined under the Bankruptcy Code." *AARP v. First Alliance Mortgage Co. (In re First Alliance Mortgage Co.),* 269 B.R. 428, 435 (C.D.Cal.2001) (citing additional authority).

*See also Nathanson v. Nat'l Labor Relations Bd.,* 344 U.S. 25, 27, 73 S.Ct. 80, 97 L.Ed. 23 (1952) (holding that the NLRB was a creditor within the meaning of the Code because it had been granted the power to enforce the National Labor Relations Act, even though a back pay award was made to individual workers, not to the Government). This Court concurs in this approach. If, in securing a restitution award, a governmental entity is acting on behalf of the general public and is empowered by applicable statutes to enforce a payment obligation against the debtor, then it follows that the governmental entity should be considered a "creditor" for purposes of the Code. *See First Alliance Mortgage Co.,* 269 B.R. at 436 (citing additional authority); 2 Lawrence P. King, *Collier on Bankruptcy* ¶ 101.10 at 101–55 (15 ed. rev.1998) (suggesting the United States is a creditor with respect to "statutory obligations enforceable by a federal administrative agency in the public interest for the benefit of private persons.").

In this instance, Idaho Code § 30–1442 grants the director of the Idaho Department of Finance the exclusive authority to enforce the provisions of the Idaho Securities Act. The director is empowered to act on his own, Idaho Code § 30–1442(1), (2), or he may bring an action in state court to enjoin practices in violation of the Act and to have a receiver appointed to marshal a violator's assets. Idaho Code § 30–1442(3). Finally, and perhaps most importantly, the director can seek a restitution award from the state court to restore to private parties any money that may have been acquired by an offender in violation of the Act. Idaho Code § 30–1442(3)(a). In addition to civil penalties, violators may also be subject to criminal prosecution. Idaho Code § 30–1443. Clearly, then, the Idaho Securities Act was intended by the legislature to vest the director with the

exclusive authority to enforce the provisions of the Act. Plaintiff acted within the scope of that authority when it sued Defendant in state court. Since, as authorized by the statutes, the state court ordered that Defendant pay restitution, and since Plaintiff may enforce that obligation under Idaho law, the Court concludes Plaintiff is a creditor for purposes of § 523, and that Plaintiff may request a determination of dischargeability concerning Defendant's restitution obligations under § 523(a)(2)(A) and (a)(4).

## B.  11 U.S.C. § 523(a)(19).

■ Notably, § 523(c)(1) does not apply to proceedings to determine the dischargeability of debts under § 523(a)(19). While it may do so, there is no prerequisite that a creditor seek a determination from the bankruptcy court that a debt is nondischargeable as a condition of collecting a debt excepted from discharge under this provision. The parties did not address whether Plaintiff must qualify as a creditor, or possess some other type of standing, before it may bring a dischargeability action under § 523(a)(19). The Court concludes that Plaintiff may properly pursue its action under this provision.

■ Section 523(a)(19) excepts from discharge a debt for:

(i) the violation of . . . any of the State securities laws, or any regulation or order issued under such . . . State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results from—

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19)(A) and (B). Congress added this exception to bankruptcy discharge to the Bankruptcy Code in 2002 as part of the Sarbanes–Oxley Act to "disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy." *Smith v. Gibbons (In re Gibbons)*, 289 B.R. 588, 591 (Bankr. S.D.N.Y.2003) (quoting S.Rep. No. 107–146, at 2 (2002)). By enacting § 523(a)(19), Congress intended to "amend the federal bankruptcy code to make judgments and settlements arising from state and federal securities law violations brought by state or federal regulators and private individuals non-dischargeable." S.Rep. No. 107–146, at 11 (2002).

A bankruptcy court is granted jurisdiction to hear and enter judgments in proceedings to determine the dischargeability of particular debts under § 523(a). *See* 28 U.S.C. § 1334(b) (granting this Court original, but not exclusive, jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11."); 28 U.S.C. § 157(b)(1) (empowering bankruptcy judges to hear and enter final judgments concerning all "core proceedings"); and § 157(b)(2)(I) (providing that "determinations as to the dischargeability of particular debts" are core proceedings). As noted above, while there is no particular requirement in the Code that a creditor pursue an action to except a debt from discharge under § 523(a)(19), the statute does not prohibit a creditor or debtor from requesting a dischargeability determination under any of the provisions of § 523(a). And since the Court has con-

**425**

cluded that Plaintiff has standing by virtue of its creditor status to maintain an action under § 523(c) to determine the dischargeability of Defendant's restitution obligations under § 523(a)(2)(A) and (a)(4), Plaintiff is certainly no less a creditor for purposes of § 523(a)(19).

Broader public policy considerations also support the Court's conclusion that Plaintiff has standing, not just as a creditor, to pursue an action under § 523(a)(19). The legislative history of § 523(a)(19) reflects that Congress intended state and federal regulators to be able to enforce the limitations on discharge found in § 523 on behalf of defrauded investors. Congress noted that, under the current system, state regulators are forced to " 're-prove' their fraud cases in bankruptcy court to prevent discharge," and that with limited resources "already stretched to protect fraud victims, state regulators must plow the same ground twice in securities fraud cases." S.Rep. No. 107–146, at 9 (2002). Clearly, then, § 523(a)(19) was designed by Congress to enhance the ability of government regulators to prevent fraudulent practices and to assist the victims of securities fraud in recouping their losses. To deny Plaintiff standing in this case would frustrate the State's ability, and Congress's stated intent, to promote the public policies embodied by the Idaho Securities Act and hinder the efficient enforcement of the statutes in bankruptcy cases.[5]

## Conclusion

The Court concludes Plaintiff has standing to pursue its request for a determination of the dischargeability of Defendant's obligations under the state court's amended default judgment. Defendant's motion to dismiss shall be denied by separate order.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

For the reasons set forth in the Court's Memorandum of Decision filed herein, and for other good cause,

**IT IS HEREBY ORDERED THAT** Defendant's Motion to Dismiss, Docket No. 3, be and is hereby **DENIED**.

---

**5.** *See Cooper v. Gorski (In re Gorski),* 272 B.R. 59, 60 (Bankr.D.Conn.2002) (concluding that, because the Connecticut Human Rights Commission had the statutory authority to enforce housing discrimination claims, it had "an institutional interest and standing in the present adversary proceedings" to proceed as a plaintiff in a dischargeability action); *SEC v. Maio (In re Maio),* 176 B.R. 170, 172 (Bankr. S.D.Ind.1994) ("to deny the [SEC] the right of a creditor to bring a nondischargeability complaint would unduly hinder enforcement of the Securities Act and would be contrary to legislative intent."); *State of New York v. DeFelice (In re DeFelice),* 77 B.R. 376, 379 (Bankr.D.Conn.1987) ("It would be anomalous for a state to be permitted to institute or continue ... an action [enforcing its police powers] but lack standing to challenge the dischargeability of the underlying debt necessary to make that action meaningful.").